Third case for the morning is 24-6266, United States v. Weng. Good morning, Your Honor. Good morning, Mr. Krieger. May it please the Court. My name is Lawrence Schoenbach. I represent Jeff Weng as his appellate attorney. At the outset, I would ask to reserve five minutes of my time for rebuttal. We'll see how it goes. Go ahead, please. I can ask. Yes, of course, do so. Thank you, sir. With regard to several of the issues that were raised on direct appeal, I believe they have been decided. I know that Your Honor, Judge Holmes was on the panel previously with the co-defendant. I assert that those issues still are alive and well. I recognize the government's argument about the law of the case, and I cited in my brief United States v. Monsavis, which allows for the law of the case to be accepted, if you will, based upon the facts. I cited that in my brief. I don't believe it deserves or warrants any additional argument here. Given the constraints of time, I would prefer to take my time to discuss the issue of sufficiency, or as I would call it, the lack of sufficiency of the evidence against Mr. Weng. In particular, the indictment itself charges a very specific timeline and a specific set of facts. I'm sorry, from 2021 to Mr. Weng's arrest in 2023, May of 23, he was the manager of a marijuana grow farm in Wetumpka, Oklahoma. That is not the charge here. The charge is from December of 22 until May 17 of 23 that Mr. Weng was part of a conspiracy to sell black market marijuana. Frankly, I don't care. Where do you get the black market component of this? Well, I was about to say I don't care if it's black market, white market, purple market. Selling marijuana illegally is a crime under the federal code. I recognize that. Selling marijuana is a crime under the federal code, period. Yes, it is.  And I submit to Your Honor that in this case, the charge is not selling marijuana. It is conspiring to sell marijuana, to possess it with the intent to distribute it. And there is no evidence, none, that shows that Mr. Weng was part of the charged conspiracy. The date of the conspiracy in December of 22 is when Brandon Yee was arrested. Brandon Yee was the cooperator in this case. The end of the conspiracy was May 17, 23, the date when Mr. Weng was arrested following the search of the farm. That's the finite period. And during that period of time, no evidence was adduced that Mr. Weng did anything. You're right. We are talking about a conspiracy. And a drug conspiracy has no overt act. So there doesn't have to be proof that he did anything beyond join the conspiracy, right? And that's correct, Judge. And there's no evidence that he joined that conspiracy. Okay, let's try this. During the period that you've listed here, December 22 to May 23, was he still manager of Wetumpa Grow? Yes, sir. He did the paperwork for Wetumpa Grow? For the legal grow, by his own admission, yes. For the grow, right? Yes. When I say legal grow, I'm referring to the state. I recognize the federal government has a different position. I get it. That's why I'm here. Okay. Well, what I'm saying is he did the paperwork for the business, which meant that he would have been aware of what was happening. Well, it would have been a reasonable inference from a reasonable jury that he would have been aware of what was going on in the business that he did the paperwork for. That's what I'm getting at. Would you dispute that? No, I think that's a reasonable inference, that the jury could find that he did the paperwork, he admitted to it, and that that was part of his job. Okay, and that he was manager. There was money, there was $100,000 found in the attic above where he slept, right?  Okay. And the money he made monthly, $3,000 to $4,000, was nowhere near the $100,000 that was in his attic, right? I think that's a reasonable inference. Okay. I'll stop ticking him off, but the point I'm getting at is I thought I heard you say there's no evidence. Why isn't the evidence, just the evidence that I ticked off, evidence that a reasonable jury could consider in determining that he had joined a conspiracy? Again, we're not talking about overt act, we're talking about joining a conspiracy. Why isn't that evidence, well, why isn't that evidence at least taking us down the road to sufficiency? Because that goes, if anything, assuming a jury accepts that, the money and, in fact, also the gun that was found in the house, in three separate places. Meaning the gun was found in a lockbox, it was empty, the clip was found in a drawer on the other side of the house, and the holster was somewhere in the middle. A reasonable jury could find that those facts showed Mr. Wang's knowledge, but not necessarily his participation, and certainly not his agreement to be a member of the conspiracy. Now, I've listed a whole bunch of facts that were never shown. But what are the elements that you are contending precisely there is a lack of evidence? I'm sorry, Judge. What are the elements precisely, the elements of the conspiracy charge that you contend were insufficiently proven beyond a reasonable doubt? The agreement. The agreement. There's no agreement. There's no fact adduced that Mr. Wang agreed with Tong Lin. Did he know the objective of the conspiracy? Do you concede that? No, I don't concede that. Because the conspiracy, again, and it's just for a title, not for a definitive fact. Call it black market. It's the sale of marijuana during this time period. There's no evidence adduced that Mr. Wang knew that marijuana was being sold during that time period. Certainly no evidence that it was being sold. He was the manager of the grow. He managed it. He did all the paperwork. It's not even an inference to assume he knew marijuana was being sold. How do you even need an inference for that? Well, that means, Judge, being the manager is a status. It's a title. Do I think, am I naive enough to think that that's all it was? No, of course not. But the government has to prove that he did something toward that agreement. And even if he meant, here's the thing. If Mr. Wang was charged with distribution of marijuana as an illegal federal crime, which it is, they could easily have charged from February, or I'm sorry, from 2021 till May of 23. Because that was the time period he was the manager, by his own admission. They didn't. They chose a very finite period of time. But he was still the manager during that time. Of course he was. And he's no different. You know, in my opening brief, I argued that he was no different than the electronic salesman, the manager of the electronic salesman at a Walmart. And I think the government was correct in rebutting that by saying they're doing something illegal. But now suppose that not being the manager of the electronics department, he's the pharmacist at a Walmart. And his protege, if you will, is the assistant pharmacist. They're both licensed by the state. They're both licensed by the federal government. Mr. Wang is the pharmacist at a Walmart. How does he know if Tong Lin, also a pharmacist, also licensed by the state, assuming my analogy, is selling medical grade cocaine out the back door, fentanyl out the back door? He doesn't know that. Or at least there's no evidence that he did. Or that he joined in the Tong Lin conspiracy with Brandon Yee and others. That strikes me as the more salient point, because you could have knowledge but not join the agreement. I mean, to your point about the pharmacist, and I like your hypotheticals, but the problem I find with that one in particular is Tong Lin was a subordinate to Mr. Yee. He was not an equal. And the paperwork was handled by Mr. Wang. And so he would have known what marijuana was being grown, how many plants they had. He would have known all of these things by virtue, at least a reasonable jury could infer that, by virtue of being the manager. And so if there's this whole patch of marijuana that's growing on this property, presumably he would know that too, right? I think that's correct, Judge. Okay, he'd know that there's this whole patch of marijuana outside of what his records show that is being grown on the property. He is the manager of this operation. Which means, unlike in the pharmacist situation, he can say stop this enterprise, tell Tong Lin to stand down. But he didn't do that. One, I know that's not a crime, but let me work with me for a second. Go ahead, please. I'm sorry. Actually, I do want to interrupt you. I apologize. We don't know that, Judge. There's no evidence that Mr. Wang didn't say stop, don't do this. And there's no evidence that he said continue to do it. There's just no evidence. There is no evidence. But the bottom line is that all we're talking about is what a reasonable jury could, would there have been sufficient evidence. It doesn't have to be optimal. It doesn't have to be bulletproof. The question is, would a reasonable jury be able to find that he joined this conspiracy? And if he was the manager, and if the premise that he would have known there was marijuana being grown that was outside the scope of what he had to report to the state of Oklahoma, then the question would be, what is he doing vis-a-vis his subordinate? One, and as I understood it, he had a boss, right? Oh, it was the owner. Who was the owner? And there's a licensee also. Okay. Well, Mr. Wang received a paycheck, and that paycheck in no way, shape, or form was equivalent to, he could have been very frugal and saved a lot of money, but it was not equivalent to the $100,000 in change that was found in the attic above where he lived. So couldn't a reasonable jury infer, hmm, that's a lot of money. I wonder how he came by that money. And he's the manager of this marijuana farm. Hmm. That leads me to believe that maybe he was involved in doing something illegal. Where's the gap in that? It's easy, Judge. The gap is, is he selling or did he join the conspiracy to distribute, to sell marijuana as charged in the indictment? What you're doing, with all due respect, is a broad brush, the same thing that the broad brush that the government did at trial. You know, the government summed up at trial and said, hold on. This was a black market marijuana operation, and what was going on wasn't legal in any type of system. That only says black market, I'm sorry, that only says black market marijuana, and that says conspiracy. That's not true. As you, as you pointed out, I don't really care whether it was black market marijuana. Right. That's not, that's not the point I'm getting at. The point I'm getting at is that, that in this situation in which he had accumulated a good deal of wealth that bore very little connection to the paycheck that he was receiving. Why couldn't a reasonable jury infer that, that when you combine that and you combine that he was a manager and you combine that he had at least nominally the authority to stop Tong Lin from doing what he was doing and he didn't. Well, why couldn't a reasonable jury infer, well, the reason he didn't stop is because he was part of it. Because a reasonable jury could just as easily have assumed he was unaware of the sales by Tong Lin to Brandon Yee. They could have easily assumed that the money in the attic, the $100,000 in cash, wasn't Mr. Wang's money. It belonged to someone else. Maybe. I'm not suggesting it wasn't or was. But there's no evidence one way or the other and you're asking for speculation. And that is something a jury cannot do. No, you're correct. The jury cannot do that. But what a jury can do is choose among competing inferences. And what I hear you saying is that there are other inferences that the jury could have drawn from the money in the attic and otherwise. Well, yes, they could have. But they didn't. And the question is whether it was irrational for them to draw the inference that they did. That the money that was in the attic above where he slept was his money. And even if it is his money and even if that's an inference that the jury accepted, it goes to the knowledge, not the participation. And I use participation as an agreement. Could I ask one question? I heard at least you highlight a few times the range of the indictment. And you noted that I was painting with a broad brush. I'm trying to understand what is the salience of the range of the indictment because it seems that all of the external facts remain the same. He was the manager before the indictment period. He was the manager during the indictment period. What changed in the indictment period that didn't exist before? I think as this court recognizes and the facts were kept from the jury, this court said it was okay, that the finite period of the charged indictment is about selling marijuana illegally out of state. Not just selling marijuana, which is illegal, I get, under the federal code. Out of state makes it black market, if you will. Purple market, blue market, it doesn't matter. The government charged Mr. Wang because of the criminal sales by Tong Lin to Brandon Yee and all of the surrounding facts that stem from the investigation of Brandon Yee's illegal marijuana business. And if you accept the premise that whether it was black market or not, it would have been illegal, then what difference does it make from your purposes, from purposes of your defendant? I mean, the government can talk black market and all that stuff if it wants to, and frame the indictment accordingly, but what difference does it make if at whatever period in the scope of the time that Mr. Wang was manager, he was a part of a conspiracy to distribute marijuana? Even if it was prior to the indictment period, what difference does it make? It makes a difference because there's no agreement induced in any way other than what you have identified before with the gun and the money, and I submit that those facts, if accepted by a jury, go to the issue of knowledge of the illegal enterprise, but not the participation, and I use that word by agreement, of Mr. Wang to participate in the conspiracy. Wasn't there a deliberate ignorance instruction given in this case? There was. Okay, well, you can spend a lot of time trying to not know something that you, in fact, know is going on, right? And you could be held guilty of it, right? Of course. Okay. I see that I'm out of time. Thank you. Thank you, Counsel. May it please the Court, Stephen Kreger on behalf of the United States. Since my opposing counsel has spent virtually all of his time on sufficiency of the evidence, that's where I'll start. A sufficiency claim, the burden, even if preserved, simply asks whether the evidence was sufficient and do it in a light most favorable to the government to prove the essential elements of the offense. Mr. Wang was the manager of a marijuana grow. Marijuana is a Schedule I controlled substance. There is no lawful grow, so this Court can set aside whether it was to Mr. Yee or whether this discrete distribution meant that he was guilty or not guilty. The grow that he was managing, the grow that he had Mr. Lin as a management intern and had other employees was growing 19,661 marijuana plants and another, I believe, 400 pounds of processed marijuana. He had $100,010 in the attic above his bedroom. This Court has said that a large quantity of drugs, a large quantity of cash, is sufficient to show an intent or that at least allows a jury to draw the inference of an intent to distribute. How does the government think we should be thinking about the indictment period that the appellant has been emphasizing? Well, first I would note that I'm fairly confident he didn't raise the indictment period as an argument in his briefing, as a specific argument, so arguably it's waived. But I would note that the indictment, while it does say from honor about December 1st, 2022, it says the exact date being unknown to the grand jury. So the grand jury wasn't stuck on that specific date. But even if we take that date, as the panel has noted, I believe Judge Holmes specifically has noted, the agreement continued on past that. Every time that he was managing employees, every time that he was being consulted, which after the date of the indictment, and I believe it's pages 70 to 71, Mr. Wing controlled access to who could come onto the grow. Mr. Wing hired Mr. Lin. What specific date was not revealed. But he continually and actively managed the employees of the grow. So the agreement in a conspiracy is an ongoing thing. So even if it started beforehand, it carried on from 2022 through 2023. I would also note, as I did in our brief, there was much to do about sales. But the crime here is distribution or intent to distribute. So there technically doesn't have to be any evidence of sales. I think based on $100,000 in the attic, there could be a reasonable inference that there was sales. There were sales. And I don't think it really is disputed that there were sales. Well, let me let me ask you this question. There there is certainly abundant case law that the tools of the trade case law, the case of talking about firearms and there's a case of talking about cash and how they're indicative of a legal activity. OK, that that is true. But if under that case law does not posit, does it? The situation that we have here where marijuana is an illegal business federally, but it is not statewide. And so it is a cash business. I mean, I mean, what inference do you draw from the fact that they have cash when they would have cash because they can't use banks? Well, I would submit that they can't use banks because it's illegal federally. And if they were to use the reason banks won't do business with them is because it could pretend it could bring up money laundering, federal money laundering charges because the specified unlawful activity would be drug distribution. And so the fact that it's a cash business still provides that inference that it's illegal activity under federal law. So your response to the chief's question is that those tools of the of the of the trade cases are equally applicable here, even though it is lawful under state law? Yes, Judge Rossman, as this court explained in the Tonglin appeal, Mr. Wings co-defendant, whether it's lawful under state law or not is ultimately irrelevant. And unless the court has any further questions. Why was this case brought at all in light of the appropriations writer? I think a large part of it had to do with the fact that Mr. E. It originated with Mr. E. He was tracked. He was taking things out of state. And so by taking things out of state, it was not being done consistent with state law. I do have a question relative to the law of the case. There is some pushback that's given to the law of the cases application here in the reply brief, in which there is the suggestion that the evidence of the guilt of trial was substantially different than the evidence applied to his co-defendant, or that that's a substantially different exception to the law of the case doctrine applied in this case. Since it was raised in the reply brief, I want to give you an opportunity to address what's your view on whether that particular exception to the law of the case doctrine would have any resonance here? Well, so I would have two responses. The first response would be the substantially different has to deal with substantially different in a subsequent case. The evidence with Mr. Wing and the evidence with Mr. Lynn was the exact same evidence. They were tried before the same jury. The same evidence was put on. But even setting that aside, while the evidence may have – actually, I have two more responses. The first one being that this is the law of the case. We're talking about law. We're not talking about facts. We're not even talking about the application of the law to the facts of the facts of the law. The law of the case doctrine, specifically as it deals with the appeal of the grant of the government's motion in Lumine, this court decided evidence regarding the defendant's knowledge of legality under state law or legality under state law was irrelevant. It doesn't matter what the facts are. Irrelevant evidence is still irrelevant. Mr. Lynn and Mr. Wing were charged with the exact same crime. There's no reason why the evidence would be relevant as to Mr. Wing but not irrelevant as to Mr. Lynn. While this talk – and shifting slightly – while this talk about black market marijuana, I mean, if the premise all along is that distributing marijuana is illegal, full stop, as a federal matter, well, who cares whether it's black market marijuana or not and why was the government focused on that? So, why was it black market, again, goes back to everything with Mr. Yee and the fact that it was being taken out of state. Could there have been an objection under 403? Possibly. I'm not going to say it would have been definitively sustained or overruled, but there simply was no objection and some sort of 403 argument wasn't raised either in the district court or on appeal. That's not before us, but it is not your contention that whether it was black – is it your view that whether it was black market marijuana or not is a relevant fact in this prosecution? I would submit it's relevant. I don't think it's necessary on the sufficiency claim. I don't think whether it's black market or not is relevant to this court's decision. I think it perhaps provides additional support as to knowledge, as to certain elements of the offense. How? I'm confused by that. What did it have to do with anything as far as the charge against this defendant or any of the defendants? So to the extent that a reasonable jury or a jury could find that Mr. Wing – and I think there is evidence and a jury could draw this inference – that Mr. Wing knew about what was happening with Mr. Yee and how all of this was unfolding, the fact that he was also being – he was also in violation of Oklahoma law and running a black market – essentially a black market component of the overarching grow. But it was totally not necessary. And that's why I would submit there might have been a 403 objection that could have been raised. And in fact you excluded evidence related to state law, right? So I mean that doubly makes it irrelevant. And the jury was instructed not to consider whether it was lawful under state law or not. Seems like the jury could have been pretty confused about the whole – the evidence of black market sales versus not being told why it was black market or, you know, what Oklahoma law provided. Your Honor, I will admit that if I had free reign to rewrite the record to not include references to black market, I would do so. But as far as the issues before this court, I think ultimately the question of black market is red herring. And unless the court has any further questions, I would ask that you affirm the judgment in the sentence below. Thank you. You ended up with no time, right? I'm sorry, Judge? Did you end up with any time for rebuttal? I don't think so. That's his time. He had two minutes. Okay, please. I think I can keep this brief, Judge. I have nothing further to add. But if the court has any questions, I'm happy to answer them. I think not. So thank you. Have a good day. Thank you. All right. The case is submitted.